**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KARAMYCHEV ANDREI VLADIMIROVICH,

Petitioner,

v.

KRISTI NOEM, et al.

Respondents.

No. 5:26-cv-00737 MRA-DSR

**ORDER:**
**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS;**
**(2) DENYING REQUEST FOR TEMPORARY RESTRAINING ORDER AND APPOINTMENT OF COUNSEL AS MOOT; AND**
**(3) DENYING PETITIONER'S REQUESTS FOR FURTHER RELIEF BEYOND IMMEDIATE RELEASE**

Before the Court is Petitioner's Petition for Writ of Habeas Corpus. Doc. No. 1. Also before the Court are two requests for additional relief filed by Petitioner in this case subsequent to the Petition (Doc Nos. 8, 10), a request for appointment of counsel (Doc. No. 9), and a Motion for a Temporary Restraining Order asking the Court to order Petitioner's immediate release pending final resolution of his Petition (Doc No. 14). The Court has read and considered each of Petitioner's requests. Respondents have filed responses both to the Petition and the Motion for Temporary Restraining Order stating that they "do not have an opposition argument to present" to the Petition (Doc. No. 7) and "are not presenting an opposition argument at this time" to the Motion for Temporary Restraining Order (Doc. No. 18). Nevertheless,

Respondents continue to hold Petitioner in detention. The Court deems these matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); L.R. 7-15. For the foregoing reasons, the Court **GRANTS** the Petition and **ORDERS** that Petitioner be immediately released. Petitioner's other various requests are **DENIED** for the reasons discussed below.

## I. BACKGROUND

According to the unrebutted allegations in the Petition and the Motion for Temporary Restraining Order, Petitioner is a Russian citizen who first entered the United States in 1998 and married a United States citizen in 1999. *See* Mot. for TRO (Doc. No. 14) at ECF p. 3. He has been ordered deported from the United States. *See* Pet'n at ECF p. 10. The details about his deportation are sparse in the Petition and Motion but are not material here since Petitioner does not attempt to attack the removal order in this habeas case.[1] Rather, this case concerns Petitioner's ongoing detention while he awaits deportation to Russia.

On June 3, 2025, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") agents at a county jail facility in Broward County, Florida, where he was being held while awaiting trial in a state criminal proceeding. *Id.* at ECF p. 23. Those state charges have since been dismissed, and Petitioner has never been convicted of any crime. *Id.*, *see also* Pet'n at ECF p. 26 (Circuit Court Disposition Order for Broward County, Florida, showing "Nolle Prosequi" – prosecutor's abandonment – of both pending charges against Petitioner). On June 8, 2025, Petitioner was transferred to the ICE detention center in Adelanto, California. *Id.* He remains there until this date. *See generally* Pet'n.[2]

---

[1] The Court takes judicial notice pursuant to Federal Rule of Evidence 201 of the fact that the Automated Case Information website for the Executive Office for Immigration Review (https://acis.eoir.justice.gov/en/caseInformation) shows that an Immigration Judge in Miami, Florida, ordered Petitioner removed in September 2017, and that Petitioner's Motion to Reopen his deportation case was denied in August 2018.

[2] The Court has also confirmed through ICE's Online Detainee Locator (cont'd . . .)

Petitioner filed his Petition for Writ of Habeas Corpus on February 12, 2026, challenging his ongoing detention. *See* Doc. No. 1. The Court ordered the Clerk to serve a copy of the Petition on Respondents and the United States Attorney, and ordered Respondents to file a response to the Petition. *See* Doc. No. 4.[3] As noted above, Respondents admitted in response to the Petition that they have "no opposition argument to present." Doc. No. 7 at 2:4-5. Nevertheless, Respondents continued to detain Petitioner, causing Petitioner to seek a Temporary Restraining Order compelling his release pending final disposition of this case. *See* Doc. No. 14. The Court ordered Respondents to file a response to the TRO application no later than 5:00 p.m. on April 5, 2026. *See* Doc. No. 15. At 6:46 p.m. on April 9, 2026, Respondents filed a response stating that their "position remains the same: they are not presenting an opposition argument at this time," and apologized to the Court for the late filing on the basis that the attorney previously responsible for this action had recently needed to depart on long-term leave. *See* Doc. No. 18. Absent from this second admission that Respondents were unable to assert any legal justification for detaining Petitioner was any statement that they would therefore stop detaining him. *Id.*

## II. DISCUSSION

### A. A Writ of Habeas Corpus Ordering Petitioner's Immediate Release from Detention is Appropriate Because His Detention is Unlawful

As noted above, Respondents affirmatively stated – twice – that they "do not have an opposition argument to present." Failure to file an Opposition may be deemed consent to the granting of the relief requested. *See* Local Civil Rule 7-12. Still, the Court will also analyze the Petition on its merits.

---

System (https://locator.ice.gov/odls/#/results) that Petitioner remains detained at the Adelanto facility as of April 11, 2026.

[3] The Court concurrently granted Petitioner's request for leave to proceed without prepayment of the filing fee. *See* Doc. No. 5.

Under the Immigration and Nationality Act ("INA"), when a noncitizen is ordered removed, the government ordinarily must secure the noncitizen's removal from the United States within a period of 90 days, known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following dates: (i) "[t]he date the order of removal becomes administratively final;" (ii) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order;" or (iii) "[i]f the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." *Id.* § 1231(a)(1)(B)(i)-(iii). Certain noncitizens ordered removed may be detained beyond the 90-day removal period, including, *inter alia*, those who are removable under 8 U.S.C. § 1227(a)(2) for certain criminal offenses, those determined to be a risk to the community, or those unlikely to comply with the order of removal. *Id.* § 1231(a)(6). If released, the noncitizen must be subject to terms of supervision. *Id.* § 1231(a)(3). The statute enumerates the countries to which a noncitizen may be removed. *See* 8 U.S.C. § 1231(b). Where removal to those enumerated countries is "impracticable, inadvisable, or impossible," removal can still be effectuated to any "country whose government will accept the [noncitizen] into that country." 8 U.S.C. § 1231(b)(2)(E)(vii).

The primary federal habeas corpus statute, 28 U.S.C. § 2241, authorizes District Courts to grant writs of habeas corpus where the petitioner is, *inter alia*, "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The law is clear that § 2241 "remain[s] available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). In *Zadvydas*, the Supreme Court held that the post-removal-period detention scheme contains "an implicit 'reasonable time' limitation." *Id.* at 682. That is, "the statute, read in light of the Constitution's demands, limits [a noncitizen]'s post-removal-period detention to a period

reasonably necessary to bring about that [noncitizen]'s removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Court reasoned that "[a] statute permitting indefinite detention of [a] [noncitizen] would raise a serious constitutional problem," because "[t]he Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law.'" *Id.* at 690. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court observed that the first justification for post-removal-period detention—risk of flight—is "weak or nonexistent where removal seems a remote possibility at best." *Id.* As for the second justification—protecting the community—the Court observed that it has "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691. Where "preventive detention is of potentially *indefinite* duration," the Court has "demanded that the dangerousness rationale be accompanied by some other special circumstance . . . that helps to create the danger." *Id.*

To determine the legality of post-removal detention, the Supreme Court directed courts to consider "whether the detention in question exceeds a period reasonably necessary to secure removal," measuring reasonableness "primarily in terms of the statute's basic purpose" of "assuring the [noncitizen]'s presence at the moment of removal." *Id.* at 699. The Court held that the "presumptively reasonable" period of detention is six months. *Id.* at 701. In setting forth this six-month presumption, however, the Court made clear that it "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a[] [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, after this six-month period, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Here, Respondents have detained Petitioner far in excess of the presumptive six-month period. Petitioner has been in ICE custody since June 3, 2025 – now in excess of 10 months. *See* Pet'n at ECF p. 8. Petitioner has met his burden to provide "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." According to the unrebutted allegations in the Petition, ICE requested travel documents for Petitioner to facilitate his deportation on August 4, 2025 – eight months ago – but Russia has not responded to the request. *See* Pet'n at ECF pp. 9-10. Petitioner also notes the Russian-Ukraine war and the resulting deterioration in diplomatic relations between the United States and Russia, including the closing of multiple Russian consulates and Petitioner's own inability to meet with Russian consular officials. *Id.* at 8-9.

The burden therefore shifts to Respondents to provide evidence sufficient to rebut that showing – specifically, evidence that there *is* a significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Respondents, however, make no attempt at any such showing, effectively conceding the point. Accordingly, Respondents' continued detention of Petitioner is unlawful. A Writ of Habeas Corpus ordering Petitioner's immediate release is appropriate.

**B. Prospective Relief Barring Speculative Third-Country Removal is Not Appropriate**

In addition to seeking his immediate release from detention, Petitioner also seeks in his Petition, and in particular in his Motion for a Temporary Restraining Order, prospective protection from removal to a third country. *See* Pet'n at ECF pp. 12-15; Mot. for TRO (Doc. No. 14) at ECF pp. 8-17. Petitioner has not, however, shown that Respondents intend to remove him to a third country. The only evidence before the Court of a request for travel documents is to Russia. *See* Pet'n at ECF p.

10. Petitioner asserts that "[t]o the extent that Petitioner's detention is meant to facilitate his removal to [a] third country . . . if such a removal is accomplished in violation of his due-process rights, then his detention is illegal." Pet'n at ECF p. 15 (emphasis added). There is nothing before the Court, however, to indicate any plan to remove Petitioner to a third country. "Therefore, Petitioner's fear of being removed to a third country without proper notice or opportunity to respond is only speculative and not ripe for adjudication." *Morales Sanchez v. Bondi*, No. 5:25-CV-02530-AB-DTB, 2025 WL 3190816, at *4 (C.D. Cal. Oct. 3, 2025); *see also Farsi v. Noem*, No. 5:25-CV-03275-WLH-MBK, 2025 WL 4041921, at *5–6 (C.D. Cal. Dec. 10, 2025) (denying TRO with respect to third country removal because Petitioner failed to assert removal to third country was imminent); *Ovikian v. Noem*, No. 5:26-cv-00158-WLH-E, 2026 WL 242700, at *7 (C.D. Cal. Jan. 23, 2026) (same). Accordingly, there is no ground to grant relief in this case, on this record, against a speculative attempt at removal of Petitioner to a third country.

**C. Petitioner's Applications for Appointment of Counsel and for a Temporary Restraining Order are Moot**

Petitioner has also requested appointment of counsel to represent him in this case (Doc. No. 9) and a Temporary Restraining Order compelling his release pending final disposition of this case (Doc. No. 14). In light of this Order granting his Petition on the merits, issuing the Writ, and ordering Petitioner's immediate release, this case is now complete. There is no need for counsel for Petitioner in this case, and there is no need for a TRO. Accordingly, these requests are DENIED as moot.

**D. Petitioner's Requests for Other Relief Exceed the Scope of Relief Available on Habeas Corpus**

Finally, after Respondents filed their Response to the Petition, Petitioner filed two separate requests for additional relief. On March 12, 2026, requested transportation to Fort Lauderdale, Florida (where he was first detained by ICE, prior

to ICE bringing him to Adelanto, California) or $500 to cover the estimated cost of a Greyhound bus ticket to return there. *See* Doc No. 8. On March 16, 2026, Petitioner filed another request for additional relief in which he seeks (in addition to his immediate release, an injunction prohibiting third-country removal, and the transportation to Fort Lauderdale or $500 bus fare) an award of costs and attorney's fees and an order compelling "Respondents to provide proper dental treatment that includes fillings, root canal treatment, dentures fabrication outside of Adelanto ICE Detention Center, as this facility failed to provide dental care to Petitioner and cause[d] significant damage." *See* Doc. No. 10.

With the exception of Petitioner's request for costs and attorney's fees, such additional relief is beyond the power of this Court to award on this habeas petition. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). "The power of a federal habeas court 'lies to enforce the right of personal liberty' [and] . . . [a]s such, a habeas court 'has the power to release' a prisoner, but 'has no other power.'" *Douglas v. Jacquez,* 626 F.3d 501, 504 (9th Cir. 2010) (citation omitted). "[D]amages are not an available habeas remedy." *Nelson v. Campbell*, 541 U.S. 637, 648 (2004). Thus, while the Court can (and does) order Petitioner's immediate release, it cannot order in this habeas case Respondents to transport Petitioner back to Florida, or to pay him $500 for a bus ticket, or to provide him dental care after his release.

That leaves then only Petitioner's request for an award of costs and attorney's fees. Petitioner makes this request under 28 U.S.C. § 2412. *See* Doc. No. 10 at ECF p. 2. As to attorney's fees, Petitioner has represented himself in this case *pro se*. *Pro se* litigants are not entitled to an award of attorney's fees under Section 2412. *Merrel v. Block*, 809 F.2d 639, 642 (9th Cir. 1987); *see also Kay v. Ehrler*, 499 U.S. 432, 435 (1991). As to costs, it does not appear that Petitioner has incurred any

recoverable costs; the Court granted his request to proceed without prepayment of costs. *See* Doc. No. 5. If, however, Petitioner believes that he has incurred recoverable court costs (as specified in 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54), he may file an Application to the Clerk to Tax Costs under Local Rule 54-2.1.

**III. CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**. A Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is hereby issued. Respondents, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with Respondents shall immediately release Petitioner from detention on reasonable terms of supervision pursuant to 28 U.S.C. § 1231(a)(3), (6).
2. Petitioner's Motion for a Temporary Restraining Order (Doc. No. 14) and his Request for Counsel (Doc. No. 9) are **DENIED** as moot.
3. Petitioner's requests for additional relief (Doc. Nos. 8 and 10), to the extent they exceed the relief granted by issuance of the writ of habeas corpus and order of immediate release, are **DENIED** for the reasons discussed above, except that Petitioner may file an Application to the Clerk to Tax Costs under Local Rule 54-2.1 if he incurred recoverable costs in this case.
4. Finally, Respondents are to file a status report no later than 5:00 p.m. on Tuesday, April 14, 2026, confirming that they have released Petitioner.

**IT IS SO ORDERED.**

DATED: April 13, 2026

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE